<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MICHAEL JOHNSON, *on behalf of himself and all others similarly situated*,

Plaintiff,

v.

COMODO GROUP, INC. *et al.*,

Defendants.

Civil Action No. 16-4469 (SDW) (LDW)

**OPINION**

May 6, 2022

**WIGENTON**, District Judge.

Before this Court is Plaintiff Michael Johnson's ("Plaintiff") Motion to Modify the Class Definition pursuant to Federal Rule of Civil Procedure ("Rule") 23(c)(1)(C). This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Plaintiff's motion is **GRANTED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

This Court writes for the parties and summarizes the facts and complex procedural history of this case only to the extent necessary to decide this motion. Between 2012 and 2016, Defendant Comodo Group, Inc. ("Defendant" or "Comodo") made cold sales calls for its then affiliate, Comodo CA Ltd., which was in the business of issuing/selling Secure Sockets Layer ("SSL") Certificates to website owners. (D.E. 190-1 ¶ 1.)[1] SSL Certificates are encryption keys that enable

---

[1] Record citations in this opinion are generally to Defendant's Statement of Material Facts Not in Dispute (D.E. 190-1) and Plaintiff's L.R. 56.1(a) Responsive Statement (D.E. 200), as well as the record citations contained therein. Citations to portions of deposition transcripts refer to the original transcript page numbers.

website owners to securely transfer data to and from their customers.  (*Id.*)  Each Certificate contains expiration date information and often contains the user's (*i.e.*, website operator's) name and telephone number.  (D.E. 200 ¶¶ 33, 34.)

Defendant used an automated computer program to crawl the Internet to compile a database of SSL Certificates, their expiration dates, and their users' names and telephone numbers.  (*Id.*)  Defendant formulated sales leads containing phone numbers for soon-to-expire Certificates and loaded the leads into a dialing platform called "VICIdial."  (*Id.* ¶¶ 35, 37.)  VICIdial is a "predictive dialer" that automatically called stored leads throughout the day when it expected that one of Defendant's sales agents was available to take an already dialed and connected call.  (*Id.* ¶¶ 37, 44.)  VICIdial is able to dial leads randomly, sequentially, or by some internal rank—this setting can be changed by pressing a button.  (*Id.* ¶¶ 39, 41.)  Defendant used the "internal rank" setting.  (*Id.* ¶ 40.)  VICIdial also permits sales agents to leave prerecorded messages by pressing a button.  (*Id.* ¶¶ 45–46.)  Defendant's sales agents only used this option when calls were sent to voicemail.  (D.E. 190-1 ¶¶ 17–19.)

Plaintiff filed this lawsuit on July 22, 2016.  (D.E. 1.)  In the Second Amended Class Action Complaint, filed September 5, 2018, Plaintiff alleged that Defendant's calling practices violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*  (D.E. 76 ¶¶ 67–84.)  The TCPA, in relevant part, prohibits making non-emergency calls without consent "using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service. . . ."  47 U.S.C. § 227(b)(1)(A)(iii).

On January 31, 2020, this Court granted Plaintiff's Motion for Class Certification and certified the following class: "(1) All persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using the VICIdial ATDS or a prerecorded voice

[(4)] within four years of the filing of the complaint."  (D.E. 221 ("January 2020 Opinion") at 18.)  The January 2020 Opinion also denied Defendant's Motion to Exclude Plaintiff's Expert; denied Defendant's Motion for Summary Judgment that the VICIdial system was not an ATDS and that its prerecorded voicemails did not violate the TCPA; and denied Defendant's Motion for Summary Judgment that its conduct was not willful and subject to treble damages.  (*See id.* at 8–18.)[2]

On February 25, 2020, this Court granted Defendant leave to file an interlocutory appeal of its summary judgment ruling that VICIdial was an ATDS, identifying "a substantial ground for difference of opinion" on the issue of whether a device that can "automatically dial stored telephone numbers but cannot randomly or sequentially generate them" qualifies as an ATDS. (D.E. 233 at 2, 3.)  This Court declined to certify for appeal whether Defendant's prerecorded messages violated the TCPA but noted that the Third Circuit would not be restricted to the legal question that this Court certified.  (*See id.* at 4 nn. 4, 5.)  On May 11, 2020, the Third Circuit granted permission to appeal as to the ATDS issue (the "ATDS Appeal") but denied Defendant's request to appeal the prerecorded message issue.  (D.E. 235.)  On August 20, 2020, the Third Circuit stayed the ATDS Appeal pending the Supreme Court's resolution of *Facebook Inc. v. Duguid.  See ATDS Appeal*, No. 20-2113, 2020 WL 8271638.  On April 1, 2021, the Supreme Court issued its opinion in *Facebook*, resolving an inter-Circuit split and holding that, to qualify as an ATDS, a device must have the capacity to itself generate phone numbers using a random or sequential number generator, and then dial those numbers.  *See* 141 S. Ct. 1163, 1173.  This definition of ATDS does *not* encompass VICIdial, which cannot randomly or sequentially generate phone numbers.  Accordingly, on September 1, 2021, pursuant to Rule 15(a)(2) and with

---

[2] The January 2020 Opinion also reserved decision on Defendant's argument that the TCPA was unconstitutional, pending the U.S. Supreme Court's decision in *Barr v. Am. Ass'n of Pol. Consultants, Inc.*  (*See* January 2020 Opinion at 15.)  The Supreme Court ruled in *Barr* on July 6, 2020, holding that a portion of the TCPA unrelated to this lawsuit was unconstitutional but severing that portion from the remainder of the statute.  *See* 140 S. Ct. 2335 (2020).

Defendant's consent, Plaintiff filed a Third Amended Complaint, withdrawing his ATDS-related claims and mooting the ATDS Appeal. (D.E. 242, 243.) Thereafter, on September 7, 2021, the Third Circuit dismissed the ATDS Appeal and returned jurisdiction to this Court. (D.E. 245.)

Plaintiff subsequently filed the instant motion to modify the class definition, asking this Court to certify a "Modified Class" that removes reference to "the VICIdial ATDS" as a criterion for class membership. (D.E. 251-1 at 1.) The Modified Class consists of "(1) [a]ll persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using a prerecorded voice (4) within four years of the filing of the complaint." (*Id.*) Defendant timely filed an opposition brief and Plaintiff filed a reply. (D.E. 252, 255.)

## II.    <u>LEGAL STANDARD</u>

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence [its] compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc*., 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)). Specifically, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). These requirements are, respectively, referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 590–91.

A party seeking class certification under Rule 23(b)(3) must satisfy several additional requirements. First, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. To do so, the plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores*, *Inc*., 725 F.3d 349, 355 (3d Cir. 2013)). Second, Rule 23(b)(3) requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These additional requirements are, respectively, referred to as the ascertainability, predominance, and superiority requirements. *See, e.g.*, *Byrd*, 784 F.3d at 161 n.4, 162, 164.

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Thus, "[e]ven after a certification order is entered, the [court] remains free to modify it in the light of subsequent developments in the litigation." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). However, the court must consider whether the modified class satisfies the criteria of Rule 23(a) and (b) in light of factual and legal developments, and also whether the parties or the class would be unfairly prejudiced by the change. *See In re Harcourt Brace Jovanovich, Inc. Sec. Litig*., 838 F. Supp. 109, 115 (S.D.N.Y. 1993) (citation and quotation marks omitted).

## III.    **DISCUSSION**

In order to identify putative class members, Plaintiff's expert, Anya Verkhovskaya, proposes to rely on Defendant's call log, which it produced in response to an interrogatory asking

it to "[l]ist (by date, time, name and telephone number called) all calls placed . . . to a cellular line during the Class Period in order to sell an SSL Certificate." (D.E. 115-6 (Anya Verkhovskaya's Expert Report ("Verkhovskaya Report")) ¶ 16; D.E. 179-8 at 12–13 (Defendant's Response to Plaintiff's Interrogatory No. 9).) The call log contains system codes ("AL" and "AUTOVM") that indicate whether each call was dialed using a prerecorded voice. (*See* D.E. 200 ¶¶ 58, 59.) Using these codes, Ms. Verkhovskaya identified 15,637 unique telephone numbers that were dialed 54,544 times by Defendant using a prerecorded voice. (Verkhovskaya Report ¶ 24.) She proposes using a LexisNexis database to input these telephone numbers and produce a report detailing subscribers/users of the telephone numbers, including names, addresses, associated date ranges, and whether each number is a cellular number or landline—a process known as "reverse-append." (*Id.* ¶¶ 31, 32.) For any subscribers/users not fully identified through this process, Ms. Verkhovskaya will use databases and services provided by TransUnion, Microbilt, Experian, and the U.S. Postal Service to fill in the gaps. (*Id.* ¶¶ 35–37.)

In its opposition brief, Defendant argues that the Modified Class does not meet Rule 23's ascertainability, numerosity, and predominance requirements. (*See* D.E. 252 at 21–38.) Defendant primarily focuses on ascertainability. (*See id.* at 21–35.) A class is ascertainable where "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (vacating and remanding denial of class certification in TCPA matter) (citation and internal quotation marks omitted). "[P]laintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id.* (citation and internal quotation marks omitted). "Affidavits, in combination with records or other

reliable and administratively feasible means, can meet the ascertainability standard." *Id.* at 441 (citation omitted).

Defendant's arguments against ascertainability are largely duplicative of arguments that this Court rejected when it granted Plaintiff's original Motion for Class Certification.  First, Defendant argues that the "AL" and "AUTOVM" status codes in its call log cannot be used to identify when calls were made using a prerecorded voice.  (*See* D.E. 252 at 23–25.)  Defendant contends that the codes "were manually entered by sales representatives using a row of 'radio' buttons."  (*Id.* at 24.)  However, as this Court stated in its January 2020 Opinion, "Ms. Verkhovskaya's reliance on the VICIdial system codes used in the call log is justified—these codes are unlikely to be prone to human error as they were entered by the system itself (and not a human being) . . . when an agent pressed a button to play a prerecorded message."  (January 2020 Opinion at 17.)[3]  Defendant also contends that some calls were so short that no prerecorded message could have played.  (*See* D.E. 252 at 24 (citing Bruce Deal's Expert Report ("Deal Report") ¶ 48).)  Although a partial prerecorded message is still actionable under the TCPA, *see Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 824–25 (N.D. Ill. 2016), to the extent that these calls did not include a message, they are identifiable and filterable, as evidenced by Defendant's expert's report.  (*See* Deal Report ¶ 48 (quantifying calls ranging from one to six seconds).)

---

[3] Defendant's and VICIdial's representatives testified that where the call log states "AL" in the "Status" column, it means that (1) an agent pressed a button to deploy the prerecorded message and (2) the message played.  (*See* D.E. 179-5 (Excerpts of the Deposition Testimony of Mirza Mehran, Defendant's VICIdial and Call Center Developer) at 133, 147, 152–54; D.E. 255-1 (Excerpts of the Deposition Testimony of Matt Florell, VICIdial's Designer and Owner) at 106–07, 109–10.)  Defendant's long-time sales manager also testified that she was unaware of an AL code that agents manually entered.  (*See* D.E. 255-4 (Excerpts of the Deposition Testimony of Jennifer Ortiz) at 222.)  Defendant relies on statements from the May 24, 2019, declaration of Israel Israilov (D.E. 168-1 ("Israilov Decl.")), Defendant's Director and then Vice President of Development, Operational Technology, to argue that "AL" can correlate with either leaving a prerecorded message or a caller leaving a live message, and that sales agents manually entered this code.  (*See* D.E. 252 at 23–24 (citing Israilov Decl. ¶¶ 15–16, 25).)  However, this Court gives little weight to Mr. Israilov's declaration, as it is contradicted by the Mehran and Florell deposition testimony, and by even Mr. Israilov's own testimony.  (*See* D.E. 255-2 (Excerpts of the Deposition Testimony of Israel Israilov) at 157–59 (incorrectly stating that he was unaware that sales agents could leave prerecorded messages).)

Second, Defendant argues that the call log it produced contains non-cellular telephone numbers. (*See* D.E. 252 at 25–26.) However, Defendant produced this log in response to an interrogatory requesting a list of calls to cellular lines and, in any case, Ms. Verkhovskaya can filter calls to landlines. (*See* January 2020 Opinion at 15–17.) Third, fourth, and fifth, Defendant argues that the use of LexisNexis reverse-append in conjunction with affidavits is unreliable, that Ms. Verkhovskaya's method cannot distinguish between telephone number users and subscribers, and that the method cannot account for reassigned cellular phone numbers. (*See* D.E. 252 at 26–34.) This Court addressed each of these arguments in its January 2020 Opinion and its analysis remains unchanged. (*See* January 2020 Opinion at 16–20 (finding that Ms. Verkhovskaya's proposed method is reliable, that both subscribers and users have standing under the TCPA, and that reassigned telephone numbers will not pose a significant issue in this class).)

Finally, Defendant argues that the Modified Class is not ascertainable because Ms. Verkhovskaya has not yet performed her methodology in this case. (*See* D.E. 252 at 34–35.) As this Court previously stated, "Plaintiff's methodology is testable, reliable, and sufficiently capable of identifying putative class members," "[i]t has already been used in other TCPA class actions," and "[t]here is nothing special about this case that counsels a different course of action." (January 2020 Opinion at 16, 18.) Plaintiff's request to remove certain class members from the certified class definition is eminently reasonable in view of *Facebook*, and Defendant will have a full and fair opportunity to challenge the ascertained class at trial or through the claims process.

Beyond ascertainability, the predominance and numerosity requirements are also met. Numerosity clearly exists where more than 15,000 persons remain in the Modified Class. (*See* Verkhovskaya Report ¶ 24.) Any questions affecting only individual members are predominated by the common questions of fact and law, including "whether Defendant's use of prerecorded

messages violated the TCPA, whether the public availability of putative class members' contact information constituted prior express consent to Defendant's calls, and whether treble damages are warranted." (January 2020 Opinion at 18.) Whether a prerecorded message played on a recipient's voicemail may be resolved by reference to the objective class data (*i.e.*, whether the status code of the call contains "AL" or "AUTOVM"), and any calls where an incomplete message played can be identified and filtered out if necessary, as discussed above, reducing individualized issues. Because the other Rule 23 requirements are also met for the reasons discussed in this Court's January 2020 Opinion, Plaintiff's motion to modify the class will be granted.[4]

## IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Modify the Class Definition is **GRANTED**. An appropriate order follows.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:      Clerk
cc:        Hon. Leda D. Wettre, U.S.M.J.
           Parties

---

[4] This Court also notes that no unfair prejudice will result from modifying the class definition. Defendant is not prejudiced by a smaller class and individuals in the modified class are not prejudiced because their situation remains unchanged. Although there is prejudice to individuals who were in the original class but are now outside the new class definition (*i.e.*, those who received a VICIdial automatic call but not a prerecorded message), this prejudice is not unfair. Their claims are no longer tenable following *Facebook*, 141 S. Ct. 1163.