**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHAEL JOHNSON, *on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>COMODO GROUP, INC. *et al.*,<br><br>    Defendants. | Civil Action No. 2:16-04469 (JKS)(LDW)<br><br>**OPINION**<br><br>June 10, 2024 |

**SEMPER**, District Judge.

This matter comes before the Court on Defendant Comodo Group, Inc.'s ("Defendant") Motion to Strike the Opinions of Plaintiff Michael Johnson's ("Plaintiff") expert, Anya Verkhovskaya, for Sanctions, and for the Decertification of the Modified Class. (ECF 312.) Plaintiff filed a brief in opposition. (ECF 317.) Defendant replied. (ECF 318.)[1] The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Rule 78.1(b). For the following reasons, the Court **DENIES** Defendant's Motion in its entirety.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court incorporates by reference its summary of fact background and procedural history of the case set forth in the Court's January 31, 2020 and May 6, 2022 decisions. (*See* ECF 221, ECF 256.) By way of brief background, between 2012 and 2016, Defendant made cold sales calls

---

[1] Defendant's brief in support of its motions (ECF 312-1) will be referred to as "Def. Br." Plaintiff's brief in opposition (ECF 317) will be referred to as "Pl. Opp." Defendant's reply brief (ECF 318) will be referred to as "Reply."

for its then affiliate, Comodo CA Ltd., which was in the business of issuing/selling Secure Sockets Layer ("SSL") Certificates to website owners. (ECF 190-1 ¶ 1.)[2] SSL Certificates are encryption keys that enable website owners to securely transfer data to and from their customers. (*Id.*) Each Certification contains expiration date information and contains the user's (i.e., website operator's) name and telephone number. (ECF 200 ¶¶ 33, 34.)

Defendant used an automated computer program to compile a database of SSL Certificates, their expiration dates, and their users' names and telephone numbers. (*Id.*) Defendant formulated sales leads containing phone numbers for soon-to-expire Certificates and loaded the leads into a dialing platform called "VICIdial." (*Id.* ¶¶ 35, 37.) VICIdial is a "predictive dialer" that automatically called stored leads throughout the day when it expected that one of Defendant's sales agents was available to take an already dialed and connected call. (*Id.* ¶¶ 37, 44.) VICIdial can dial leads randomly, sequentially, or by some internal rank – this setting can be changed by pressing a button. (*Id.* ¶¶ 39, 41.) Defendant used the "internal rank" setting. (*Id.* ¶ 40.) VICIdial also permits sales agents to leave prerecorded messages by pressing a button. (*Id.* ¶¶ 45-46.) Defendant's sales agents only used this option when calls were sent to voicemail. (ECF 190-1 ¶¶ 17-19.)

Plaintiff filed suit on July 22, 2016. (ECF 1.) In the Second Amended Class Action Complaint, filed September 5, 2018, Plaintiff alleged that Defendant's calling practices violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (ECF 76 ¶¶ 67-84.) The TCPA, in relevant part, prohibits making non-emergency calls without consent "using any automatic telephone dialing system ["ATDS"] or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

---

[2] Record citations in this opinion are generally to Defendant's Statement of Material Facts Not in Dispute (ECF 190-1) and Plaintiff's L.R. 56.1(a) Responsive Statement (ECF 200), as well as the record citations contained therein. Citations to portions of deposition transcripts refer to the original transcript page numbers.

On January 31, 2020, this Court granted Plaintiff's Motion for Class Certification and certified the following class: "(1) All persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using the VICIdial ATDS or a prerecorded voice [(4)] within four years of the filing of the complaint." (ECF 221 ("January 2020 Opinion") at 18.) The January 2020 Opinion also denied Defendant's Motion to Exclude Plaintiff's Expert, Anya Verkhovskaya ("Ms. Verkhovskaya"). (*Id.* at 16-18.)[3]

On September 1, 2021, pursuant to Federal Rule of Civil Procedure 15(a)(2) and with the Defendant's consent, Plaintiff filed a Third Amended Complaint, withdrawing his ATDS-related claims.[4] (ECF 242; ECF 243.) On May 6, 2022, this Court granted Plaintiff's Motion to Modify the Class Definition and certified the following Modified Class: "(1) All persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using a prerecorded voice (4) within four years of the filing of the complaint." (ECF 256 ("May 2022 Opinion") at 4.)

On March 15, 2023, Plaintiff moved for approval of the notice plan. (ECF 279.) As part of his motion, Plaintiff included an affidavit of Ms. Verkhovskaya, dated March 15, 2023, ("March 15, 2023 Affidavit"), which outlined the reverse-append process utilized to compile the class list. (ECF 279-10.) Shortly thereafter, Defendant requested the Court permit the deposition of Ms. Verkhovskaya to address her March 15, 2023 Affidavit and class list. (ECF 280.) The Court granted Defendant's application and ordered Ms. Verkhovskaya's deposition be taken on or before May 31, 2023. (ECF 286.) Defendant took Ms. Verkhovskaya on May 25, 2023. (*See* ECF 313-7.)

---

[3] Additionally, the January 2020 Order denied Defendant's Motion for Summary Judgment that the VICIdial system was not an ATDS and that its prerecorded voicemails did not violate the TCPA and denied Defendant's Motion for Summary Judgment that its conduct was not willful and subject to treble damages. (ECF 221 at 8-14.)

[4] On April 1, 2021, the Supreme Court issued its opinion in *Facebook Inc. v. Duguid*, 592 U.S. 395, 409, which resolved an inter-Circuit split and held that, to qualify as an ATDS, a device must have the capacity to itself generate phone numbers using a random or sequential number generator, and then dial those numbers. This decision of ATDS does *not* encompass VICIdial, which cannot randomly or sequentially generate phone numbers.

On July 14, 2023, Defendant filed its opposition to Plaintiff's Motion for Approval of the Notice Plan, which included a declaration by Defendant's counsel that identified purported issues with the class list. (ECF 288.) Thereafter, Plaintiff filed its reply, which included a declaration of Ms. Verkhovskaya, dated August 24, 2023 ("August 24, 2023 Declaration").[5] (ECF 297.)

On November 17, 2023, Defendant filed the instant motion to strike the opinions of Ms. Verkhovskaya in their entirety, for sanctions, and to decertify the Modified Class. (ECF 312; ECF 313.) Plaintiff filed an opposition brief and Defendant filed a reply. (ECF 317; ECF 318.)

## II.    LEGAL STANDARD

### A.  Decertification of Modified Class

A "party proposing class-action certification bears the burden of affirmatively demonstrating by a preponderance of the evidence [its] compliance with the requirements of Rule 23." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015) (citing *Comcast Corp v. Behrend*, 569 U.S. 27, 33 (2013)). Specifically, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a)(1)-(4). These requirements are, respectively, referred to as the numerosity, commonality, typicality, and adequacy requirements. *See, e.g.*, *Marcus*, 687 F.3d at 590-91.

---

[5] On August 10, 2023, the Court administratively terminated the Motion for Approval of the Notice Plan until the adjudication of the Motion to Decertify. (ECF 293.)

A party seeking class certification under Rule 23(b)(3) must satisfy additional requirements. First, "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable." *Byrd*, 784 F.3d at 163. To do so, the plaintiff must show that "(1) the class is 'defined with reference to objective criteria'; and (2) there is a 'reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). Second, Rule 23(b)(3) requires the party seeking certification to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These additional requirements are, respectively, referred to as the ascertainability, predominance, and superiority requirements. *See, e.g.*, *Byrd*, 784 F.3d at 161 n.4, 162, 164.

"An order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). "Pursuant to this rule, district courts may decertify a class where appropriate after the case develops." *Bayshore Ford Truck v. Ford Motor Co.*, No. 99-741, 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010) (citing *Barnes v. Am. Tobacco Co., Ins.*, 161 F.3d 127, 140 (3d Cir. 1998) ("Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops.")); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in litigation."). "If, upon considering the record, the court finds that the criteria for and goals of class certification are no longer being met, [a] motion for class decertification should be granted." *Barkouras v. Hecker*, No. 06-0366, 2007 WL 4545896, at *1 (D.N.J. Dec. 19, 2007) (internal quotations marks omitted). Decertification is particularly

warranted where there are changes in the substantive or procedural law, *Martinez-Santiago v. Pub. Storage*, 331 F.R.D. 94, 101 (D.N.J. 2019)) or "subsequent facts call into question whether continued class action treatment is proper[,]" *Bayshore Ford Truck*, 2010 WL 415329, at *2; *see also In re Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2017 WL 3494221, at *3 (E.D. Pa. Aug. 14, 2017) ("Generally, class decertification is prompted by a change in factual circumstances or developments in applicable substantive or procedural law.").

"[I]n the absence of materially changed or clarified circumstances courts should not condone a series of rearguments on the propriety of class certification[.]" *City Select Auto Sales, Inc. v. David/Randall Assocs.*, 96 F. Supp. 3d 403, 413 (D.N.J. 2015) (internal quotations marks omitted). Moreover, decertification is considered an "'extreme step' particularly at a late stage in litigation, 'where a potentially proper class exists and can easily be created.'" *Korrow v. Aaron's Inc.*, No. 10-6317, 2015 WL 7720491, at *10 (D.N.J. Nov. 30, 2015) (quoting *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012)). Ultimately, "[t]he party seeking to decertify a class action has the burden of showing 'changed circumstances' that would warrant the decertification of the class action." *Barkouras*, 2007 WL 4545896, *1 (quoting *Muise v. GPU, Inc.*, 851 A.2d 799, 810-11 (N.J. App. Div. 2004)).

## B.  Exclusion of Expert Opinion

Where an expert opinion is critical to class certification and a party challenges the reliability of that opinion, the reviewing court must engage in a two-step analysis before analyzing whether Federal Rule of Civil Procedure's requirements have been met. Specifically, the court must ascertain (1) whether the party's challenges bear upon "those aspects of [the] expert testimony offered to satisfy Rule 23" and (2) if so, whether the opinion is admissible as to those aspects under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993). *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187-88 (3d Cir. 2015). Rule 702 provides the parameters for permissible expert testimony:

> A witness who is qualified as an expert by knowledge, skill experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[6]

The Federal Rules of Evidence embrace a liberal policy of admissibility, including with respect to expert testimony. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). In deciding whether to admit expert testimony, the trial court is a "gatekeeper" tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (applying *Daubert* standard to all expert testimony). The court must consider whether: (1) the expert is qualified; (2) the expert's testimony is reliable; and (3) the expert's testimony is helpful to the trier of fact, i.e., it must "fit" the facts of the case. *See United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010). The proponent of the expert testimony must prove these requirements by a preponderance of the evidence. *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citation omitted).

A witness is qualified to provide expert testimony only if the witness has "specialized expertise" in the testimony's subject matter. *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d

---

[6] The Court applies the current version of Rule 702, which was amended on December 1, 2023. The amendment does not substantively alter Rule 702, but rather "clarifies that the preponderance standard applies to the three reliability-based requirements added in 2000—requirements that many courts have incorrectly determined to be governed by the more permissive Rule 104(b) standard." Fed. R. Evid. 702 advisory committee's note to 2023 amendments.

396, 404 (3d Cir. 2003); *see also In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (affirming rejection of "overly rigorous requirements of expertise" and expressing "satisf[action] with more generalized qualifications"); *Pineda*, 520 F.3d at 244 (proposed expert witness need be "qualified"). A witness's testimony "fits" a case if it is more likely than not that it would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also United States v. Ford*, 481 F.3d 215, 219 n.6 (3d Cir. 2007) (internal quotation marks omitted) ("[F]it is [primarily] a relevance concern.").

> In deciding whether proposed expert testimony is reliable, the trial court should examine:
>
> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 742 n.8. Each step of the expert's analysis must be reliable, including "the methodology, the facts underlying the expert's opinion, and the link between the facts and the conclusion." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012). But proponents of expert testimony need not "prove their case twice—they do not have to demonstrate . . . by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (internal quotation marks omitted).

Finally, if good grounds for the witness's testimony are shown, the testimony "should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004)

(quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998));

*Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) ("Admissibility decisions

focus on the expert's methods and reasoning; credibility decisions arise after admissibility has been

determined.").

## III.   DISCUSSION

### A.   Motion to Exclude

Defendant raises multiple arguments in support of its motion to exclude the opinion of

Plaintiff's expert Anya Verkhovskaya ("Ms. Verkhovskaya") (Def. Br. at 20-31.) First, Plaintiffs

argues Ms. Verkhovskaya's opinions should be excluded pursuant to Federal Rule of Evidence 702

for lack of reliability.[7] (Def. Br. at 20-25.) Defendant also argues Ms. Verkhovskaya's opinions

should be excluded pursuant to Federal Rule of Civil Procedure 37 because she made "false

statements in her Third Report." (*Id.* at 25-28.) Finally, Defendant seeks the exclusion of Ms.

Verkhovskaya's Third Report and her prior opinions because of the inconsistencies in her prior

statements and opinions. (*Id.* at 28-29.) Plaintiff challenges each of these bases. (Pl. Opp. at 17-

31.) The Court will address each argument in turn.

#### i.   Exclusion Pursuant to Federal Rule of Evidence 702

---

[7] While a court considers the reliability factors outlined in *Daubert* when evaluating the reliability of a particular scientific methodology, the same factors may not be instructive where the proposed testimony is "nonscientific" in nature, like in this case. *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000); *Zaprala v. USI Servs. Grp.*, No. 09-1238, 2013 WL 1148335, at *7 (E.D. Pa. Mar. 20, 2013); *Voilas v. General Motor Corp.*, 73 F. Supp. 2d 452, 461 (D.N.J. 1999). Thus, in nonscientific cases, "the relevant reliability concerns will focus upon personal knowledge and experience of the witness and the methodology used will be applying that experience to the facts of the case." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 286 F.R.D. 266, 269-70 (W. D Pa. 2012) (internal quotation marks omitted); *see also Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (detailing that in nonscientific cases, "the emphasis is placed not on the methodology of the expert testimony, but on the professional and personal experience of the witness"); *Amco Ukrservice v. Am. Meter Co.*, No. 00-2638, 2005 WL 1541029, at *2 (E.D. Pa. June 29, 2005) ("Because it is usually impossible to subject nonscientific theories to experimentation, a district court should concentrate on the expert's experience, rather than methodology."). In fact, "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho Tire*, 526 U.S. at 156.

Plaintiffs raise numerous bases for Ms. Verkhovskaya's lack of reliability pursuant to Federal Rule of Evidence 702. (Def. Br. 20-25.) Defendant first argues Ms. Verkhovskaya's opinions should be excluded because her methodologies have "shifted multiple times, and [Ms.] Verkhovskaya has conceded that her data sources cannot reliably identify the users/subscribers of telephone numbers on the call dates in question." (Def. Br. at 20.) In contrast, Plaintiff argues Ms. Verkhovskaya has utilized the reverse-append methodology that was described and approved by the Court in its January 2020 Opinion. (Pl. Opp. at 17-19.)

In her expert report, dated October 16, 2018, ("Expert Report"), Ms. Verkhovskaya outlined the process for identifying the names and addresses of class members through LexisNexis:

> In order to identify, within a historical timeframe, the names and addresses of subscribers/users of telephone numbers, I will first coordinate with Data Processor LexisNexis to effectuate a process which I have run in numerous class actions. This process involves inputting a file of telephone numbers to the LexisNexis online batch interface; the file is then processed via an established, custom and proprietary algorithm. The resulting output file provides a comprehensive report of subscriber/users of the telephone numbers, including name, address, and associate date ranges, and whether the number is a cellular number or not. This process is commonly known as reverse-append.
>
> The reverse-appended process is able to identify the subscriber/user/owner of a given telephone number at a point in time.

(ECF 313-6 ¶¶ 32-33.)

Defendant contends Ms. Verkhovskaya shifted her methodology during her May 25, 2023 deposition by testifying she did not rely on the date information provided by LexisNexis. (Def. Br. at 20.) The Court disagrees with Defendant's characterization of Ms. Verkhovskaya's deposition testimony. Upon review of the deposition transcript, the Court finds Ms. Verkhovskaya did not testify that she shifted her methodology. For example, Ms. Verkhovskaya was asked: "is the reverse append process that you refer to in paragraph 31 of your expert report, the process that you used to perform the work described in your March 15, 2023 affidavit with respect to LexisNexis[,]" and

responded "Yes." (ECF 313-7 at 18:20 to 25.) Additionally, Ms. Verkhovskaya confirmed that it was "possible and administratively feasible to identify the names and addresses of the historical users, subscribers of those telephone numbers" through the process outlined in her Expert Report. (*Id.* at 46:11 to 20.)

Defendant's contention that Paragraph 8 of the August 24, 2023 Declaration indicates another shift in Ms. Verkhovskaya's methodology is similarly unavailing. (Def. Br. at 20-21.) Paragraph 8 of the August 24, 2023 Declaration reflects an elaboration of her opinions and does not indicate a shift in the reverse-append process Ms. Verkhovskaya utilized to create the Notice List. (*See* ECF 317-15 ¶ 8.)

Defendant next argues Ms. Verkhovskaya's expert opinion should be excluded because she has misrepresented her "standard" methods for TCPA cases, which "demonstrates that her opinions are not the product of reliable principles and methods[.]" (Def. Br. at 21-22.) In support of this contention, Defendant emphasized the phrase "depending on the case[]" the "general standard practice . . . is applicable and sometimes is not," from the August 24, 2023 Declaration. (ECF 317-15 ¶ 10.) However, a review of Paragraph 10 of the August 24, 2023 Declaration does not support this interpretation, which provides:

> Similarly, on page 36, line 13-25 through page 37, lines 2-6 of the May 2023 Verkhovskaya Transcript:
>
> > Q. And you say in paragraph 32 of your expert report, the reverse append process is able to identify a subscriber, user, owner of a given telephone number at a point in time. Do you see that?
> >
> > A. That's correct.
> >
> > Q. And is that statement accurate?
> >
> > A. Yes.
> >
> > Q. So assuming that the call in question in a case or in this case is in 2015, is it your opinion that if we have an indication from LexisNexis that the telephone number was associated with person A

> back in the 1990s, and on the call date in question was associated with a different person, are you suggesting that class notice should be sent to both people?
>
> A. It is my recommendation that it is prudent to notify both people, that's correct.
>
> In this discussion, I was also asked about my general practice in "a case" and I answered accordingly with general standard practice that sometimes is applicable and sometimes is not, depending on the case. To clarify, however, this particular methodology was not used in this case. As discussed in a step-by-step process above, I focused both on the time frame of the telephone calls and the class period.

(*Id.*)

This paragraph does not indicate "she does not apply a standard methodology across TCPA cases[.]" (Def. Br. at 21.) Rather, Ms. Verkhovskaya's statement merely indicates her standard reverse-append process may, in a hypothetical instance, not be applicable depending on the case, but her process applied in the present action focused on the time frame of the telephone calls *and* the class period.

Defendant next claims Ms. Verkhovskaya's methodology has recently been rejected by other federal courts. (*Id.* at 22-23.) This Court has already expressed the "methodology is testable, reliable and sufficiently capable of identifying putative class members." (ECF 221 at 16.) Ms. Verkhovskaya's methodology has also already been used and approved in other TCPA class actions. *See, e.g.*, *Samson v. United Healthcare Servs. Inc.*, No. 2:19-cv-00175, 2023 WL 6793973, at *9-10 (W.D. Wash. Oct. 13, 2023); *Mey v. Matrix Warranty Solutions, Inc.*, No. 5:21-CV-62, 2023 WL 3695611, at *2-3 (N.D. W. Va. Apr. 13, 2023); *Vance v. DirecTV, LLC*, No. 5:17-CV-179, 2022 WL 3044653, at *5 (N.D. W. Va. Aug. 1, 2022); *Bumpus v. Realogy Brokerage Grp LLC*, No. 3:19-cv-03309-JD, 2022 WL 867256, at *3-4 (N.D. Cal. Mar. 23, 2022); *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-05623-BLF, 2020 WL 7391299, at *6-7 (N.D. Cal. July 22, 2020); *Abante Rooter and Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-6314-YGR, 2017 WL 1806583,

at *4 (N.D. Cal. May 5, 2017); *Krakauer v. Dish Network, LLC*, No. 14-333, 2015 WL 5227693, at *10 (M.D. N.C. Sept. 8, 2015); *Shamblin v. Obama for Am.*, No. 13-2428, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015).

Furthermore, Defendant claims Ms. Verkhovskaya made false statements in her August 24, 2023 Declaration and May 25, 2023 deposition regarding specific persons that were included on the Class List. (Def. Br. at 24-25.) A review of the August 24, 2023 Declaration and the May 25, 2023 deposition transcript do not illustrate the presence of false statements by Ms. Verkhovskaya. Rather, both reveal Ms. Verkhovskaya utilized the reverse-append process to establish the class notice list. (*See* ECF 317-15 ¶¶ 5-10; ECF 313-7 at 18:20 to 25.) Additionally, even though the August 24, 2023 Declaration identifies an error made in preparing the class notice list, the Court does not find this to constitute a false statement. As the Court elucidated in *Crowley*,

> *Daubert* does not require that an expert's testimony be excluded simply because he admitted and corrected his own mistakes or retracted his false statements. In fact, one of the very purposes of a *Daubert* hearing . . . is to give experts a chance to explain and even correct errors that they made in their reports.

322 F. Supp. 2d at 540. Notably, the identification of the error cuts down the names and addresses on the notice list of potential class members from 15,476 to 12,757. *See also Watson v. Manhattan Luxury Autos., Inc.*, No. 20 Civ. 4572, 2022 WL 4586407, at *3 (S.D.N.Y. Sept. 29, 2022) (finding "the fact that [Ms.] Verkhovskaya refined her methodology and fixed supposed problems suggests it is now more rather than less reliable").

Finally, Defendant argues "[Ms.] Verkhovskaya's reverse-append methodology depends entirely on results obtained from LexisNexis and Pacific East[,]" which are not reliable. (Def. Br. 25.) As this Court previously expressed in its January 2020 Opinion, the vendors that Ms. Verkhovskaya utilized have been reliably used in past TCPA litigations to identify telephone number users/subscribers and their addresses. *See, e.g.*, *Samson*, 2023 WL 6793973, at *9-10

(finding Ms. Verkhovskaya's usage of data processors, such as LexisNexis, to determine the TCPA class members was reliable); *Williams v. Pisa Group, Inc.*, No. 18-4752, 2023 WL 2227697, at *4, *10 (approving Ms. Verkhovskaya's usage of Pacific East as part of process to identify TCPA class members); *Krakauer*, 2015 WL 5227693, at *8-10 (holding that Ms. Verkhovskaya's use of LexisNexis to identify putative TCPA class members is a reliable methodology and denying motion to exclude). Accordingly, this Court denies Defendant's motion to exclude Ms. Verkhovskaya's opinion pursuant to Federal Rule of Evidence 702.

### ii.   Exclusion Pursuant to Federal Rule of Civil Procedure 26

Defendant also urges the Court to exclude Ms. Verkhovskaya's opinions because the August 24, 2023 Declaration "represents a wholesale change in [Ms.] Verkhovskaya's opinions and an attempt to cover up or whitewash her prior deposition testimony, which undermined her original opinions." (Def. Br. at 29.) Plaintiff contests this assertion and argues the August 24, 2023 Declaration "corrected the error in the class notice list" and "elaborated and was consistent with [Ms. Verkhovskaya's] opinion outlining how she identified the names and address of historical users of the telephone calls Comodo called." (Pl. Opp. at 31-32.)

Federal Rule of Civil Procedure 26(a)(2)(B) requires the disclosure of expert reports that must contain, in part:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them; [and]
>
> (iii) any exhibits that will be used to summarize or support them . . . .

If a party wishes to supplement the expert's report, it must follow the procedures of Rule 26(e), which states that the duty of disclosure is triggered when the party "learns that in some material respect the information is incomplete or incorrect." Courts, therefore, have "'repeatedly rejected attempts to . . . 'supplement an expert report with a "new and improved" expert report in an

opposition brief.'" 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2049.1 (3d ed. Apr. 2023 Supp.) (quoting *Gallagher v. Southern Source Packaging, LLC*, 568 F. Supp. 2d 624 (E.D. N.C. 2008)).

However, although a declaration should be stricken if it contains new opinions or information which is contradictory to that set forth in the expert report, *see Stein v. Foamex Intern., Inc.*, No. 00-2356, 2001 WL 936566, at *5 (E.D. Pa. 2001), it need not be stricken if it is merely "an elaboration of and consistent with an opinion/issue previously addressed" in the expert report. *Pritchard v. Dow Agro Sciences*, 263 F.R.D. 277, 284-85 (W.D. Pa. 2009) (internal quotation marks and citation omitted). The Third Circuit has noted that there is no "bright line rule" whereby every expert opinion "must be included in a preliminary report, "or forever be precluded." *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404, 423 (3d Cir. 2006) (finding no error in lower court's admission of expert rebuttal testimony exceeding scope of expert's original report). While the applicable case law prohibits an expert from using rebuttal as a "do-over" of an original report, courts have refrained from "automatically exclud[ing] anything an expert could have included in his or her original report." *Crowley*, 322 F. Supp. 2d at 551. When an expert's submission is deemed to be an improper supplementation of an expert report, a party may not "use that information . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).[8]

---

[8] When a party fails to comply with its duty to supplement, Federal Rule of Civil Procedure 37(c), which governs parties' failure to disclose or supplement disclosures under Rule 26(a), applies. According to the Third Circuit, the Court must consider four factors when considering whether to exclude evidence due to a parties' failure to comply with discovery duties:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000).

The Court disagrees with Defendant's characterization of the August 24, 2023 Declaration as "offer[ing] new opinions, new methods, and new testimony that were not timely disclosed[.]" Rather, Ms. Verkhovskaya's August 24, 2023 Declaration is an elaboration of her previously-issued opinions for creating the Notice List:

> Step 1. Removal of duplicate records, by identifying and excluding records with (i) exact duplicate telephone number, and (ii) exact or similar name, and (iii) duplicate addresses, within the LexisNexis reverse append file. Then repeating duplicate record removal process for the PacificEast reverse append file. The Step 1 methodology was outlined and referenced in Paragraphs 7-8 of the Verkhovskaya Affidavit; and discussed on page 11, lines 8-14 of the May 2023 Verkhovskaya Transcript.
>
> Step 2. Identification of records within the LexisNexis and then PacificEast reverse append files that have an overlap of (1) their dates of association of the telephone number and the potential class member, meaning the "FirstSeen" date and "LastSeen" date, and (2) the timeframe of the date of the first call and the date of the last call made to the 15,637 class telephone numbers within the Call Data with the disposition codes "AL" or "AUTOVM". The Step 2 methodology was described in Paragraphs 32 & 35 of the Expert Report; page 86, Lines 13-14 of the transcript of the February 2019 Deposition; and referenced on page 17, line 21 to page 18, line 7 of the May 2023 Verkhovskaya Transcript.
>
> Step 3. Identification of records within the LexisNexis and then PacificEast reverse append files that did not meet Step 2 criteria (association with as of the time of the calls), but had an overlap of (1) their dates of association of the telephone number, meaning the "FirstSeen" date and "LastSeen" date with; (2) the dates of the class period (July 22, 2012 – July 22, 2016). That Step 3 methodology was referenced on page 34, line 8 of the May 2023 Verkhovskaya Transcript.
>
> Step 4. If two or more records fit the criteria of Steps 2 and 3, they were deemed to have met the criteria of being a potential class member, and all such records were included in the Notice List of Potential Class Members. The Step 4 methodology was outlined in Paragraphs 7-8 of the Verkhovskaya Affidavit; and page 38, lines 14-19 of the of the May 2023 Verkhovskaya Transcript.
>
> (ECF 317-15 ¶ 8.)

After outlining Step 3 of the process, Ms. Verkhovskaya included in footnote 2: "Please note that while I was working on responding to Mazzuchetti Declaration, I noted an error in the code which

has since been corrected. Due to that error in the code, Step 4 was not implemented consistently." (*Id.*)

The August 24, 2023 Declaration does not "represent[] a wholesale change in [Ms.] Verkhovskaya's opinions and an attempt to cover up or whitewash her prior deposition testimony[.]" Rather, the August 24, 2023 Declaration provides an elaboration of the opinions provided by Ms. Verkhovskaya, which this Court finds permissible under Federal Rule of Civil Procedure 26(e). Additionally, the August 24, 2023 Declaration identifies and corrects an error previously made in creating the Notice List and modifies the names and addresses on the Notice List from 15,476 to 12,757. (ECF 317-15 ¶¶ 31-32.) The Court finds the modification of the Notice List to be proper. *See Crowley*, 322 F. Supp. 2d at 540. Accordingly, the Court finds the August 24, 2023 Declaration is permissible under Federal Rule of Civil Procedure 26(e).[9]

### B.  Motion for Decertification of Modified Class

In support of its motion for decertification of the Modified Class, Defendant argues Plaintiff cannot meet the ascertainability and predominance requirements set forth by Rule 23(b)(3). (Def. Br. at 29-40.) Defendant challenges these assertions and contends the Modified Class is ascertainable and predominated by common questions. (Pl. Opp. at 32-39.) The Court addresses each argument in turn.

A class is ascertainable where "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether

---

[9] Defendant also moves for this Court to sanction Plaintiff by excluding Ms. Verkhovskaya's opinion pursuant to Federal Rule of Civil Procedure 37 due to the "false statements" made in the August 24, 2023 Declaration and "unexplained delay in notifying [Defendant] of the supposed errors in [Ms.] Verkhovskaya's Expert Work and Second Report[.]" (Def. Br. at 26-27.) Pursuant to Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information   . . . unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure." As the Court finds Plaintiff has not failed to comply Federal Rule of Civil Procedure 26(a) or (e), the Court declines to sanction Plaintiff pursuant to Federal Rule of Civil Procedure 37.

putative class members fall within the class definition." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) (vacating and remanding denial of class certification in TCPA matter) (internal quotation marks and footnote omitted). "[P]laintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *Id.* (citation and internal quotation marks omitted). "Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *Id.* at 441 (citation omitted).

Defendant first argues the methodology Ms. Verkhovskaya utilizes to identify the historical users or subscribers of cell phones, i.e., LexisNexis and Pacific East, cannot be used to reliably ascertain class members. (Def. Br. at 30-31.) Additionally, as discussed *supra*, LexisNexis and Pacific East can reliably be used to identify telephone numbers users/subscribers and their addresses. *See, e.g.*, *Samson*, 2023 WL 6793973, at *9-10; *Williams*, 2023 WL 2227697, at *4, *10; *Krakauer*, 2015 WL 5227693, at *8-10.

Defendant next contends Ms. Verkhovskaya reverse-append methodology cannot ascertain the class because it "cannot identify who owned or used the phone numbers on the date the calls were made[.]" (Def. Br. at 31-34.) As this Court previously expressed, "Plaintiff's methodology is testable, reliable, and sufficiently capable of identifying putative class members," "[i]t has already been used in other TCPA class actions," and "[t]here is nothing special about this case that counsels a different course of action." (*See* ECF 221 at 16, 18; ECF 256 at 8.) Furthermore, a considerable number of courts have approved the reverse-append methodology. *See, e.g.*, *Samson*, 2023 WL 6793973, at *9-10; *Mey*, 2023 WL 3695611, at *2-3; *Vance*, 2022 WL 3044653, at *5; *Bumpus*, 2022 WL 867256, at *3-4; *Chinitz*, , 2020 WL 7391299, at *6-7; *Abante Rooter and Plumbing*, 2017 WL 1806583, at *4; *Krakauer*, 2015 WL 5227693, at *10; *Shamblin*, 2015 WL 1909765, at

*3. "Each step of the litigation should build upon the last and, in the absence of newly discovered, non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990).

Next, Defendant asserts affidavits cannot be utilized to ascertain the true class members. (Def. Br. at 34-36.) As stated *supra*, "[a]ffidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard." *BMW Bank of N. Am.*, 867 F.3d at 441. This Court previously addressed the usage of affidavits in conjunction with the reverse-append methodology in its January 2020 Opinion and its analysis remains unchained. (*See* ECF 221 at 19-20 (finding affidavits could be utilized to address purported issues with ascertainability of class).)

Furthermore, Defendant argues Ms. Verkhovskaya's methodology did not filter out calls to cell phones. (Def. Br. at 37-38.) In her report, Ms. Verkhovskaya opined she would be able to filter calls to landline numbers. (*See* ECF 313-6 ¶ 31.) In her May 25, 2023 deposition, Ms. Verkhovskaya continued to opine she could filter calls to landline numbers through the usage of "interactive marketing solutions[.]" (*See* ECF 313-7 at 55:24 to 56:9, 60:17 to 25.) As previously stated, "[P]laintiff need not be able to identify all class members at class certification—instead, a plaintiff need only show that class members *can* be identified." *BMW Bank of N. Am.*, 867 F.3d at 439. As such, Plaintiff's expert has identified a means of filtering the class to only cell phones to fit within the class definition.

Finally, Defendant argues that the Modified Class is unascertainable because there is no reliable way of identifying which call recipients received a prerecorded voice message. (Def. Br. at 38-39.) As previously expressed by the Court in its 2022 Opinion, although a partial prerecorded

message is still actionable under the TCPA, *see Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 824-25 (N.D. Ill. 2016), to the extent that these calls did not include a message, they are identifiable and filterable, as evidenced by Defendant's expert's report. (*See* ECF 313-5 ¶ 48 (quantifying calls ranging from one to six seconds).)

Beyond ascertainability, Defendant argues the Modified Class fails to satisfy the predominance requirement. (Def. Br. at 39-40.) Any questions affecting only individual members are predominated by the common questions of fact and law, including "whether Defendant's use of prerecorded messages violated the TCPA, whether the public availability of putative class members' contact information constituted prior express consent to Defendant's calls, and whether treble damages are warranted." (ECF 221 at 18.) Whether the person dialed was the call receipt in question can be identified through the reverse-append process, whether the number was a cell phone or landline number, as discussed above, can be identified and filtered out, and any calls where a prerecorded voice message, as discussed above, can also be identified and filtered out.

Plaintiff has met his burden, while Defendant has failed to meet its burden of showing a change in circumstances or controlling law that would warrant the drastic step of decertifying the modified class. *See Barkouras*, 2007 WL 4545896, *1 ("The party seeking to decertify a class action has the burden of showing 'changed circumstances' that would warrant the decertification of the class action." (quoting *Muise*, 851 A.2d at 810-11). Accordingly, the Court denies Defendant's motion to decertify the Modified Class.

### C.  Request to Reopen Expert Discovery

Finally, Defendant requests expert discovery be reopened to permit it time to evaluate the opinions outlined in the August 24, 2023 Declaration and methods by which Ms. Verkhovskaya compiled the Revised Class List. (Def. Br. at 40.) Plaintiff challenges this request and claims reopening expert discovery will "cause more delay to the notice of class members and to the

resolution of this case." (Pl. Opp. at 39.) The Court will allow expert discovery to be reopened to permit Defendant to evaluate the August 24, 2023 Declaration and the Revised Notice List of Potential Class Members.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Strike the Opinions of Ms. Verkhovskaya, for Sanctions, and for the Decertification of the Modified Class is **DENIED**. An appropriate Order accompanies this Opinion.


<em>/s/  Jamel K. Semper</em><br><strong>HON. JAMEL K. SEMPER</strong><br><strong>United States District Judge</strong>

Orig:     Clerk
cc:       Leda D. Wettre, U.S.M.J.
           Parties