<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL JOHNSON, on behalf of himself and others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>COMODO GROUP, Inc.,<br><br>*Defendant*. | Civil Action No. 16-4469<br><br>**OPINION**<br><br>February 4, 2026 |

**SEMPER**, District Judge.

The matter comes before the Court on Plaintiff Michael Johnson's ("Plaintiff") unopposed motion for final approval of class action settlement (ECF 354, "Settl. Mot.") and motion for attorney's fees, expenses, and an incentive award (ECF 351, "Fees Mot."). Defendant Comodo Group, Inc. ("CGI") does not oppose either motion. The Court reviewed the submissions made in support of the motions and held a final approval hearing on November 4, 2025. (ECF 357.) For the reasons stated below, Plaintiff's motions are **GRANTED**.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

This settlement represents the culmination of several years of hard-fought and complex litigation. Plaintiff initiated this class action lawsuit in 2016, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), by making automated telemarketing calls to sell encrypted software to class members' cell phones without their consent. (ECF 1 ¶¶ 1, 4.) The TCPA prohibits auto dialed or pre-recorded marketing calls to cellular telephones without the called party's prior express written consent. 47 U.S.C. §

1

227(b)(1)(A)(iii). As set forth in the Third Amended Complaint ("TAC"), the operative pleading, Plaintiff alleges CGI engaged in a sophisticated sales practice to identify sales targets, call them using a prerecorded message, and did so without any consent; express, implied, written or otherwise. (ECF 243, TAC, ¶¶ 14–48.) Plaintiff sought $500 in statutory damages for each of CGI's violations of the TCPA with trebling of up to $1,500 for willful violations. (*Id.* ¶¶ 70, 78.)

This Court certified a class of (1) all persons in the United States (2) to whose cellular telephone number Comodo made a telemarketing call (3) using a prerecorded voice (4) within four years of the filing of the complaint. (*See* ECF 256; ECF 257.) Motion practice has been "extensive and contentious." (Settl. Mot at 5.) The Court granted Plaintiff's motion for class certification, denied Defendant's motion for summary judgment, denied Defendant's multiple motions to strike the testimony of Plaintiff's expert, and denied Defendant's motion to decertify the class. (*See* ECF 221, 321, 322.) In addition, Defendant sought interlocutory review of this Court's class certification and summary judgment rulings, which was denied by the Third Circuit. *See Johnson v. Comodo Grp. Inc.*, 20-2113, 2021 WL 10312101 (3d Cir. Sept. 7, 2021). Document production throughout this litigation included emails, contracts, system manuals, slideshows, audio recordings and call records. (Settl. Mot. at 4-5.) The parties also engaged in multiple settlement conferences and mediations. (*Id.* at 5.)

The parties have agreed to a class-wide settlement where Defendant will pay $1,625,000 to settle the case, with average recovery of approximately $596. (*Id.* at 2.) Class members will receive a cash award weighted by the number of allegedly unlawful calls sent to them. (*Id.*) Each class member who submitted a valid claim form shall receive a pro rata share of the net-settlement fund (the Settlement Fund minus administrative costs, the Fee and Costs Award and the Incentive Award) weighted by the number of calls that used a prerecorded voice to the corresponding phone

number as reflected in the call data. (ECF 349-3, "Settlement Agr." Art III ¶ 1(d).) The claimed call amount will be capped at $1,500 per call which is the maximum available damages. (*Id.*) If money remains in the Settlement Fund from un-cashed benefit checks (checks sent to claiming class members which the members do not cash or deposit), the settlement administrator shall make a second distribution of the settlement fund to those who did cash their checks, provided that the total amount paid to any class member from the first and second distributions combined shall not exceed the $1,500 cap per claimed call. (*Id*, Art III, ¶ 1(h).) If any amounts remain in the fund, the remaining amounts will go to a *cy pres* recipient. (*Id.*, Art III, ¶ 1(i).) No amount of the settlement fund will revert to the Defendant. (*Id.*)

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice as to himself and all class members. (*Id.*, Art V ¶ 1(a).) Plaintiff and all class members who do not timely opt out will release Defendant from all claims "pertaining to the telephone calls made and/or calling practices utilized by or on behalf of CGI between July 22, 2012, and the date of entry of the Preliminary Approval Order to Class Members." (*Id.*)

On June 17, 2025, this Court preliminarily approved the settlement agreement. (ECF 350.) Pursuant to that preliminary approval order, notice was sent to class members by email and postcard with the terms of the settlement and inviting members to submit claims.[1] (ECF 354-5, "Cordova Decl.", ¶¶ 4-10.) Verita, the class administrator, established a settlement website, www.ComodoTCPA.com, to provide potential class members with access to the Long Form Notice, Claim Form and other settlement-related documents. (*Id.* ¶ 11). Verita also established a

---

[1] Pursuant to the Class Action Fairness Act, 28 U.S.C. §1715(b), on May 5, 2025, Verita, the class administrator, sent CAFA Notice identifying the required documents to (a) the Attorney General of the United States, (b) the fifty-five (55) state and territorial Attorneys General, identified in the service list for the CAFA Notice. (Cordova Decl. ¶¶ 2-3).

toll-free hotline for class members to call and obtain information about the settlement, request a notice packet, and seek assistance from a live operator during regular business hours. (*Id.* ¶ 12.) Of the 12,757 class members identified there have been 1,266 valid claims, which represents a 10.2% claim rate. (*Id.* ¶ 13.) Those 1,266 valid claims are associated with 4,631 separate calls, with the average number of calls per valid claim of 3.66. (*Id.*) The objection, exclusion, and claim deadline was September 15, 2025. (*Id.*) There were no objections or requests for exclusion. (*Id.* ¶¶ 14-15.) Verita's costs to complete class administration are $88,377.08. (*Id.* ¶ 16.)

## II. **Final Settlement Approval**

### a. Rule 23

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, the Court may approve a proposed settlement of a class action after a hearing if the settlement "is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). The law encourages and favors settlement of civil actions in federal courts, particularly in complex class actions. *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 784 (3d Cir. 1995). As a result, when a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 & n.16 (3d Cir. 1993).

The four factors set out in Rule 23(e)(2) include: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposed settlement was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3); and (D) whether the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

### b. *Girsch* Factors

In determining the reasonableness, fairness, and adequacy of a proposed settlement for the purposes of Rule 23(e), courts consider the following factors, known as the *Girsch* factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *In re Nat'l Football League*, 821 F.3d at 437 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). The settling parties bear the burden of establishing that the Girsh factors weigh in favor of approval. But the ultimate decision of whether to approve a proposed settlement "is left to the sound discretion of the district court." *Girsh*, 521 F.2d at 157.

### i. Adequate Representation and Arms-Length Negotiation

Rule 23(e)(2)(A) and (B) look "to the conduct of the litigation" and "the negotiations leading up to the proposed settlement" to determine whether the class representative and class counsel have adequately represented the class and whether the proposed settlement was negotiated at arm's length. Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, 919).

This litigation has already spanned ten years and has been exhaustively litigated. *See Castro v. Sanofi Pasteur Inc.*, 11-7178, 2017 WL 4776626, at *3 (D.N.J. Oct. 23, 2017) (approving class action settlement where litigation spanned six years). Class counsel underwent extensive

discovery in this matter, won class certification, defeated summary judgment, defeated two attempts to strike Plaintiff's expert's testimony and to decertify the class. (*See* Settl. Mot. at 14.) Class counsel also has extensive experience in class action litigation.[2] (*Id.*) The settlement agreement is a result of an arm's length negotiation[3] because neither Plaintiff nor Plaintiff's counsel are affiliated with CGI; moreover, the parties have been adverse for years and were unable to reach an agreement early in litigation. (*Id.* 15-16.)

### ii. Adequacy of the Relief

Rule 23(e)(2)(C)(i) overlaps significant with the *Girsch* factors. Both sets of factors advise the Court to consider the adequacy of the settlement relief given the costs, risks, and delay that trial and appeal would inevitably impose. *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157. The relief here is distinctly favorable compared to other TCPA cases. The average recovery per claiming member, $596.17, is far above the average recovery for TCPA class settlements. *See, e.g., Desouza v. Aerocare Holdings LLC*, 2024 WL 1252384, at *3 (M.D. Fla. Mar. 25, 2024) ("$160 per class member . . . exceeds that of similar approved TCPA settlements and is substantial"); *Vu v. I Care Credit, LLC*, 2022 WL 22871480, at *10 (C.D. Cal. Nov. 4, 2022) (noting that an award of $18.57 per claimant "is within the range of other class action settlements

---

[2] *See, e.g., Sanchez et al. v. Kia Motors Am., Inc.*, No. 20-01604, 2024 WL 4730654 (C.D. Cal. Nov. 7, 2024) (contested class certification; certifying 10 state classes of more than 100,000 automobile purchasers and lessees bringing consumer protection and breach of warranty claims arising out of alleged windshield defect); *Guthrie et al. v. Mazda Motor of America, Inc.*, No. 22-01055, 2024 WL 5369372 (C.D. Cal. Oct. 8, 2024) (settlement class counsel representing nationwide class of approximately 86,000 vehicle purchasers and lessees bringing breach of warranty and consumer protection claims arising from alleged oil consumption defect); *Munday v. Navy Federal Credit Union*, No. 15-01629, 2016 WL 7655807 (C.D. Cal., Sept. 15, 2016) (final approval of class settlement of $2.75MM in TCPA action).

[3] Black's Law Dictionary (10th ed.2014) defines "arm's length transaction" as follows: "1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises."

under the TCPA that courts have approved"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (approving a TCPA class settlement where each of the 308,026 approved claim members (or a 7.7% claims rate) received $13.75); *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 787 (N.D. Ill. 2015) (approving class settlement providing about $34 per claimant).

The seventh, eighth, and ninth *Girsh* factors—the ability of the Defendant to withstand a greater judgment, and the range of reasonableness of the settlement given the best possible recovery and considering all the attendant risks of litigation—each support final approval of the settlement. The significant recovery for each claiming member of the class demonstrates that the settlement falls well within the range of what is fair, reasonable, and adequate, and clearly merits approval.

### iii. Class Reaction to the Settlement

The second *Girsh* factor "gauge[s] whether members of the class support the settlement." *In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). As such, courts look at the "number and vociferousness of the objectors.... [and] generally assume[ ] that silence constitutes tacit consent to the agreement." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (quoting *Bell Atl. Corp.*, 2 F.3d at 1313 & n.15).

The class reaction here has been undeniably positive. To date, there have been no objections to the settlement by any class member. The high claims rate and absence of opt-outs or objections support final approval of this settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001) (affirming district court's conclusion that the class's reaction was "extremely favorable" where 478,000 notices were sent, 4 objections were made, and 234 class

members opted out). Moreover, the strong response rate, 10.2%, is far above the median. *See* Fed. Trade Comm'n, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, 11 (2019) ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%.").

### iv. Stage of Proceedings

The relevant inquiry under the third *Girsh* factor is "whether Plaintiffs had an 'adequate appreciation of the merits of the case before negotiating' settlement." *In re Wilmington Tr. Sec. Litig.*, No. 10-0990, 2018 WL 6046452, at *5 (D. Del. Nov. 19, 2018) (*In re Prudential*, 148 F.3d at 319.). The purpose of this factor is to determine "the degree of case development that class counsel have accomplished prior to settlement." *In re Cendant Corp. Litig.*, 264 F.3d at 235. Here, the parties engaged in significant motion practice and discovery, through which Plaintiff was adequately informed of the relative strengths and weaknesses of the case against CGI such that Plaintiff and counsel were able to intelligently evaluate settlement. *See, e.g., In re Genta Sec. Litig.,* No. 04–2123, 2008 WL 2229843, at *6 (D.N.J. May 28, 2008). This factor also weighs in favor of approving the settlement.

### v. Risks of Establishing Liability and Damages

The fourth, fifth, and sixth *Girsh* factors—the risks of establishing liability, establishing damages, and maintaining the class action through the trial—also support approval of this settlement. *See Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 337 (W.D. Pa. 1997) (noting that "[h]ere, as in every case, Plaintiffs face the general risk that they may lose at trial, since no one can predict the way in which a jury will resolve disputed issues"), *aff'd*, 166 F.3d 581 (3d Cir. 1999). The purpose of these factors is to "balance the likelihood of success and the potential

damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors*, 55 F.3d at 814. Where there is a prospect of long, contentious, and uncertain litigation, these factors weigh in favor of approval. *See In re Cendant Corp. Litig.*, 264 F.3d at 238.

      vi. **Effectiveness of "proposed method of distributing relief" and "the method of processing class-member claims."**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." 324 F.R.D. 904, 920. This factor is satisfied because individualized notice was provided to identifiable class members and the notice clearly described the process for Class Members to object or exclude themselves or to submit claims. *See Hall v. Accolade, Inc.*, No. 17-3423, 2019 WL 3996621, at *5 (E.D. Pa. Aug. 23, 2019); *see also* Cordova Decl. ¶¶ 5-11 (class members received a copy of the notice via direct mail or email with all relevant documents available on the class settlement website). The high response rate, 10.2%, reflects that class members were able to submit claims without issue.[4]

      vii. **Rule 23(e)(2)(C)(iii) – The terms and timing of any proposed attorney's fee award.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." 324 F.R.D. 904, 919. Class counsel filed a motion for an award of attorneys' fees, expenses and an incentive Award on August 15, 2025, thirty days before the expiration of the objection period which concluded on September 15, 2025. (*See* Fees Mot.) The motion was promptly posted on the settlement website once it was

9

filed. (Settl. Mot. at 22.) As set forth below, the attorneys' fees, expenses, and inventive award are reasonable in this case. *See infra* Section III.

> **viii. Rule 23(e)(2)(C)(iv) – Any agreement required to be identified under Rule 23(e)(3)**

Rule 23(e)(3) requires settling parties to "file a statement identifying any agreement made in connection with the proposal." There are no other agreements other than the settlement agreement that concern the relief provided and what is released. (Settl. Mot. at 22.) The Parties have executed a stipulation following conferrals with the representatives of the state attorneys general offices. (*See* ECF 354-3, "Ex. A".)

> **ix. Rule 23(e)(2)(D) – Whether the settlement treats class members equitably relative to each other**

This factor seeks to prevent the "inequitable treatment of some class members vis-a-vis others." 324 F.R.D. 904, 920. This factor is satisfied here because class member awards are weighed by the number of allegedly unlawful calls each received. Thus, while some class members will recover more than others, that is solely a function of the difference in their injuries and is therefore equitable.

### III. Attorneys' Fees, Expenses & Incentive Award

Plaintiff's counsel also makes a motion for attorneys' fees in the amount of $650,000 (40% of the settlement fund), reimbursement of $92,283.46 in expenses, and an incentive award of $40,000 to the class representative. (Fees Mot. at 1.) The Federal Rules of Civil Procedure expressly authorize that "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Courts apply one of two methodologies in awarding fees: (1) the lodestar method or (2) the percentage-of-recovery method in which Class Counsel is awarded a percentage of the settlement amount. *See Holden v. Guardian Analytics, Inc.*, No. 23-2115, 2024 WL 2845392, at *10 (D.N.J. June 5, 2024) (citing *In*

re *AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006)). Where fees and class recovery come from a fund agreed for class recovery, the percentage-of-recovery method is used. *Id.* (citing *Dewy v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014)). The percentage-of-recovery method is preferred in common fund cases because it "rewards counsel for success and penalizes it for failure." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

In such common fund cases, "the fees typically awarded to class counsel generally range between 19% to 45% of the Settlement Fund." *Beltran v. Sos Ltd.*, No. 21-7454 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023) (citing *In re General Motors*, 55 F.3d at 822), *report and recommendation adopted*, 2023 WL 316294 (D.N.J. Jan. 19, 2023); *see also McGowan v. CFG Health Network, LLC*, No. 22-02770, 2024 WL 1340329, at *14 (D.N.J. Mar. 28, 2024) (approving 33% fee award).

### a. *Gunter* Factors

The Third Circuit has identified a list of factors (the *Gunter* factors) to determine the reasonableness of a fee award. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000); *see also Holden*, 2024 WL 2845392 at * 11 (applying the factors). The *Gunter* factors are (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases. *Id.*

As discussed, Plaintiff's counsel seeks a fee award of forty percent of the settlement fund. Here, because the *Gunter* factors substantially overlap with the *Girsch* factors, the Court will refer to its earlier findings when reviewing the fee application. An analysis of these factors supports the requested fees award.

### i. Size of the Fund and Number of Persons Benefitted

For this factor, courts "consider the fee request in comparison to the size of the fund created and the number of class members to be benefitted." *Yedlowski v. Roka Bioscience, Inc.*, 14-8020, 2016 WL 6661336, at *20 (D.N.J. Nov. 10, 2016) (quoting *Rowe v. E.I. DuPont de Nemours & Co.*, Nos. 06–1810 & 06–3080, 2011 WL 3837106, at *18 (D.N.J. Aug. 26, 2011)). The amount of the settlement fund is $1,625.000. As discussed *supra*, for the 12,757 class members, 1,266 valid claims are associated with 4,631 separate calls, and the average recovery in this case is $596.17 per claiming member, which is significantly greater than the average recovery in TCPA cases. The settlement amount and average recovery per claiming class member is thus considerable, as is the number of persons who will benefit from recovery of the cash funds.

### ii. Objections to the Fee Request

The class notice included details of the request for attorneys' fees, expenses, and the incentive award. There have been no objections. This factor weighs in favor of approving Plaintiff's fee request.

### iii. Skill and Efficacy of the Attorneys

"Lead Counsel's skill and efficiency is 'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Yedlowski*, 2016 WL 6661336, at *20 (quoting *Hall v. AT&T Mobility LLC*, No. 07–5325, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010)). In addition, "[t]he quality and vigor of opposing counsel" is relevant when evaluating the quality of services rendered by Lead Counsel. *Id.* at *21.

As discussed *supra*, class counsel are experienced class action litigators. Defendant is represented by Kelley Drye, a large national firm that vigorously defended this action. This case was litigated over the course of ten years, with extensive discovery, motion practice, mediation attempts, and appellate review. That class counsel was able to achieve this settlement in light of Defendant's defense of this action supports the reasonableness of the requested fee award. *See Granillo v. FCA US LLC*, No. 16-153, 2019 WL 4052432, at *10 (D.N.J. Aug. 27, 2019) ("the fact that Class Counsel achieved this Settlement for the Class in the face of formidable legal opposition further evidences the quality of their work, which weighs in favor of approval of the attorneys' fee award.").

### iv. Complexity and Duration of the Litigation

This ten-year litigation was complex and long. There was voluminous briefing on class certification, summary judgment, experts, appeals and class notice. This was all after extensive and contentious discovery. This settlement was not quickly or easily arrived at, which supports the forty percent fee award. *See, e.g., Holden*, 2024 WL 2845392 at *1 (awarding a third of the fund after only several months of litigation).

### v. Risk of Nonpayment

"Courts across the country have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Yedlowski*, 2016 WL 6661336, at *21. To bring a national class action on a contingency fee basis requires a law firm's commitment of time and resources in the face of significant risks of loss and delay. *See In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08–1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."). Plaintiff's counsel certainly accepted the

real risk of little or no payment when it undertook the case on a contingency fee basis. This risk is heightened for a small law firm like class counsel. Firms of small size face even greater risks in litigating large class actions with no guarantee of payment. *Boyd v. Bank of Am. Corp.*, No. 13–0561, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (finding heightened risk of small firm representation should be rewarded with larger percentage fee for good result). This factor weighs in favor of approving the fee request.

### vi. Amount of Time Devoted to the Case

As discussed *supra*, class counsel has invested significant time and effort over the past decade litigating this class action, arriving at a settlement, and will continue to devote time by monitoring claims processing and the distribution of settlement payments by the settlement administrator. These efforts, taken with the risk of no recovery to counsel, demonstrate that the fee requested is reasonable.

### vii. Awards in Similar Cases

A forty-percent fee award is within the range of what is approved in percentage-of-recovery cases in the Third Circuit in complex litigation. *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-2445, 2024 WL 815503, at *16 (E.D. Pa. Feb. 27, 2024) ("the Third Circuit has noted that reasonable fee awards in percentage-of-recovery cases generally range from nineteen to forty-five percent of the common fund.") (collecting cases). Forty percent falls on the higher end of this general range, but it is supported by the above-average results achieved by counsel here on behalf of the class for a TCPA case. Here, the total and individual recovery will be higher than a normal TCPA suit, and no amount of the settlement fund will revert back to CGI, which supports the requested fee award.

b.  *Prudential* Factors

In addition to the *Gunter* factors, courts in the Third Circuit consider the factors articulated by the Third Circuit in *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283 (3d Cir. 1998). These factors are (1) whether the benefits accruing to the class are attributable to the efforts of class counsel or other groups, such as government agencies; (2) whether the fee is comparable to the fee that would have been negotiated had the case been subject to a contingent fee agreement; and (3) whether the settlement agreement contains innovative terms and conditions. *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006) (citing *In re Prudential*, 148 F.3d at 338-40).

With respect to the first *Prudential* factor – whether the benefits are attributable to class counsel or the other groups – the settlement results here are solely the result of class counsel's efforts. In *Prudential*, the Third Circuit singled this factor out for important consideration by district courts. *See* 148 F.3d at 338.  There, the appeals court remanded the trial court's fee award for wrongly "credit[ing] class counsel with creating the entire value of the settlement" and overlooking the considerable contributions of a multi-state life insurance task force. *Id.*  Here, there was no such assistance by any state or federal body.  Thus, this Court finds that "class counsel was not aided by the efforts of any governmental group, and the entire value of the benefits accruing to class members is properly attributable to the efforts of class counsel." *In re AT&T Corp.*, 455 F.3d at 173.  This factor weighs in favor of the proposed fee.

The second *Prudential* factor – comparison of the requested fee to a negotiated contingent fee agreement –weighs in favor of the requested award.  A forty percent contingent fee is routinely negotiated in the open market. *In re Mercedes-Benz Emissions Litig.*, No. 16-881, 2021 WL 7833193, at *15 (D.N.J. Aug. 2, 2021) ("In individual cases, the customary contingent fee would likely range between 30 and 40 percent of the recovery") (quoting *Dartell v. Tibet Pharm., Inc.*,

15

No. 14-3620, 2017 WL 2815073, at *11 (D.N.J. June 29, 2017)); *Evanoff v. Marsh USA, LLC*, No. 23-3417, 2024 WL 3330571, at *2 (E.D. Pa. July 8, 2024) ("Plaintiff's counsel's contingency rate is forty percent. . . This is within the range normally accepted in these matters"); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

This settlement includes standard terms, and thus the third *Prudential* factor assessing whether the agreement contains innovative terms is neutral. *See McDonough v. Toys "R" Us, Inc.*, 834 F. Supp. 2d 329, 345 (E.D. Pa. 2011) ("In the absence of any innovative terms, this factor neither weighs in favor or against the proposed fee request."); *see also Castro*, 2017 WL 4776626, at *9 (approving attorneys' fees request where class action settlement includes standard terms when other *Prudential* factors support settlement).

c. **Lodestar Cross-Check Method**

The Third Circuit has "suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method." *Gunter*, 223 F.3d at 195 n.1. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Prudential*, 148 F.3d at 305. The purpose of a cross-check is to "ensure that the proposed fee award [under the percentage-of-recovery method] does not result in counsel being paid a rate vastly in excess of what any lawyer could reasonably charge per hour, thus avoiding a 'windfall' to lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d at 285.

There is no risk of windfall here. Using blended hourly rates to reflect change in rates over the last ten years, class counsel's lodestar is $1,333,210. (ECF 351-3, Lemberg Decl., ¶ 14). The lodestar does not include additional work associated with final approval and class counsel's oversight of the claim process. (*Id.* ¶ 13.) Thus, class counsel seeks substantially less ($650,000) than the lodestar, which supports the reasonableness of the fee award. *In re Wawa, Inc. Data Sec. Litig.*, 141 F.4th 456, 476 (3d Cir. 2025) (approving award where lodestar cross-check resulted in a negative multiplier, "meaning that counsel was compensated for fewer hours than they labored.")

### d. Reimbursement of Expenses

"Counsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002). The Court approves Plaintiff's request for reimbursement of $92,283.46 in out-of-pocket litigation expenses. (*See* Lemberg Decl. ¶ 18-21.) The expenses include filing fees, expert fees, mediator fees, deposition transcript fees, consultation fees, and postage. (*Id.*) These expenses were reasonably necessary to prosecute this case, were borne by counsel and are appropriately reimbursed from the fund. *In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2024 WL 4557366, at *22 (E.D. Pa. Apr. 9, 2024), *aff'd*, 141 F.4th 456 (3d Cir. 2025) ("Class counsel's litigation expenses include their filing fees, service of process fees, expert and professional services fees, mediation fees . . . These types of expenses are approved by courts in this Circuit with regularity."); *c.f. Castro*, 2017 WL 4776626, at *10 (D.N.J. Oct. 23, 2017) (approving out-of-pocket expenses of $7,199,310.00 as reasonable).

### e. Incentive Award

Class representatives are eligible to receive incentive awards. *In re Schering–Plough Corp. Enhance Securities Litig.*, No. 08–397, 2013 WL 5505744, at *56 (D.N.J. Oct. 1, 2013). An

17

incentive award to the class representative for bringing and litigating a case on behalf of the class promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *Manual for Complex Litigation*, § 21.62 n.971 (4th ed. 2004). "'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re So. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)).

Plaintiff seeks an incentive award in the amount of $40,000. Mr. Johnson, the class representative, has represented the class for nearly a decade, keeping in regular contact with counsel during this time, actively participating in the case, answering discovery requests, being deposed, and traveling to New Jersey from his home in Washington State twice. (ECF 351-5, Taylor Decl., ¶¶ 8, 9.) Mr. Johnson withstood CGI's attempts to settle with him individually, including offers higher than $40,000, which he rejected. (*Id.* ¶ 10.)

No class members have objected to this incentive award. The Court finds that given the significant role Mr. Johnson played throughout this litigation, the incentive award is warranted. *See McDermid v. Inovio Pharms.*, Inc., 2023 WL 227355, at *13 (E.D. Pa. Jan. 18, 2023) (approving two incentive awards to class representatives of over $75,000).

IV. **CONCLUSION**

The settlement agreement is the result of arm's-length negotiations by experienced and knowledgeable counsel which provides above-average relief to the class for disputed claims under the TCPA. For the reasons stated above and at the final approval hearing held on November 4, 2025, Plaintiff's motion for approval of the settlement is **GRANTED**. In addition, Plaintiff's motion for an award of attorneys' fees, reimbursement of expenses, and an incentive award to the

class representative is **GRANTED**. Appropriate Orders accompany this Opinion, one addressing the settlement and the other concerning the fee, expenses, and award application.

                                                           */s/ Jamel K. Semper*
                                                          **HON. JAMEL K. SEMPER**
                                                          **United States District Judge**

Orig:  Clerk
cc:     Leda D. Wettre, U.S.M.J.
        Parties